IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **WALTER JAMES ADAMS,** | ) | CASE NO. 7:20CV00265 |
| | ) | |
| **Petitioner,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **C. DAVIS, WARDEN,** | ) | By: Hon. Glenn E. Conrad |
| | ) | Senior United States District Judge |
| **Respondent.** | ) | |

Petitioner Walter James Adams, proceeding pro se, filed this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under a 2018 order from the Alleghany County Circuit Court, sentencing him to sixteen years in prison for aggravated sexual battery and indecent liberties with a minor. The matter is presently before the court on the respondent's motion to dismiss and Adams' response, making the matter ripe for disposition. For the reasons set forth below, the court concludes that the respondent's motion to dismiss must be granted.

I. BACKGROUND

On December 4, 2016, Adams was arrested on charges of aggravated battery in violation of Virginia Code § 18.2-67.3 and indecent liberties with S.A., his then 10-year-old daughter, in violation of Virginia Code § 18.2-370, the offenses allegedly having occurred between August 22, 2016, and September 30, 2016. CCR at 1–4.[1] He remained in custody without bond. Following a preliminary hearing in the Alleghany County Juvenile and Domestic Relations Court on January 27, 2017, the court certified the case to the grand jury. In the April 2017 Term, a grand jury sitting in Alleghany County indicted Adams on both charges. Id. at 24–25.

---

[1]Citations herein are to the Alleghany County Circuit Court Record, Case Nos. CR17000030-00 – 01, abbreviated "CCR," using the page numbers on the bottom center of pages in the court record.

Prior to trial, Adams' attorney filed several motions, including discovery motions, motions in limine, and others, as did the Commonwealth's Attorney. As relevant to this habeas matter, on September 5, 2017, over defense objection, the trial court granted the Commonwealth's motion, pursuant to Virginia Code § 19.2-268.3, to admit a recorded statement from the victim, given to Social Services on December 14, 2016. CCR at 93–94. On September 6, 2017, the trial court denied Adams' motion to exclude his 2014 conviction for aggravated sexual battery of KA, Adams' daughter from a previous marriage, and granted the Commonwealth's motion to allow introduction of prior bad act evidence to show pattern, identity, and modus operandi. Id. at 103. On the morning of trial, defense counsel moved to suppress evidence of Adams' alleged statements to Deputy Young, on the grounds that the statements were taken in violation of Adams' Fifth Amendment rights, because the officer had not provided the warnings required by Miranda v. Arizona, 384 U.S. 436, 445 (1966). The court declined to entertain the motion on the grounds that it was not timely filed at least seven days before trial, as required by Virginia Code § 19.2-266.2. Trial Tr. vol. 1, 7, Sept. 11, 2017. Counsel renewed her objection to Young's testimony before he took the stand and again during Young's testimony. Trial Tr. vol. 2, 7–8 & 15–17, Sept. 12, 2017.

The matter was tried before a jury from September 11 through September 13, 2017. At the conclusion of the Commonwealth's evidence and again at the conclusion of all evidence, defense counsel moved for a mistrial on the grounds that the Commonwealth had failed to turn over exculpatory evidence. The two items alleged were (1) a written statement purportedly filled out by Adams' wife at the police station, when the current charges against Adams were initiated, and (2) the thirteen-page transcript of K.A.'s initial written complaint against Adams in 2012. On the first item, the trial court accepted the testimony of the officer and of Mrs. Adams that she had not

provided a written statement to police. Because the statement did not exist, there was no Brady[2] violation. On the second issue, the trial court held that K.A.'s 2012 complaint was not exculpatory. Trial Tr. vol. 2, 65–70; Trial Tr. vol. 3, 12–20, Sept. 13, 2017. Accordingly, the motion for mistrial was denied.

Following deliberations, the jury returned a verdict against Adams, finding him guilty of both charges. Following the second phase of the trial, the jury returned sentencing recommendations of ten years for aggravated sexual battery and six years for indecent liberties and a fine of $5000.00 on each charge. CCR at 139–141. The trial court ordered a presentence report and a psychosexual evaluation and scheduled the matter for sentencing.

On October 10, 2017, the defense filed a motion for new trial based on the trial court's rulings on the evidentiary issues, Miranda, and Brady, discussed above. On January 23, 2018, the court overruled the motion for new trial, and after consideration of the presentence report, victim impact statement, and psychosexual evaluation, imposed the sentence recommended by the jury. The court entered the sentencing order on February 6, 2018, simultaneously with the judgment revoking his probation on the earlier aggravated sexual battery conviction, for which the suspended five-year sentence was also imposed. Id. at 162–165. Adams has not challenged the probation revocation and sentence in this proceeding.

Raising the same issues as in the motion for new trial, Adams appealed his conviction and sentence to the Court of Appeals of Virginia, which denied his petition on January 16, 2019. Id. at 183–196. His request for consideration by a three-judge panel was denied on April 15, 2019. Id. at 197. The Supreme Court of Virginia denied his petition for appeal on September 30, 2019.

---

[2] In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process considerations require a prosecutor to disclose to the defense any material exculpatory information in the state's possession.

Pet'r's Br. in Supp. of Pet. at 25, ECF No. 1-1. Adams did not appeal to the United States Supreme Court, nor did he file a state habeas petition.

Adams timely filed the pending § 2254 petition on or about April 30, 2020, raising the following claims:

1. The trial court abused its discretion by admitting Adams' prior bad acts, because the evidence was not admissible as modus operandi, and the prejudicial effect substantially outweighed the probative value of the evidence.

2. The trial court abused its discretion by denying Adams' motion in limine and admitting inadmissible hearsay under the "recent complaint" exception to the hearsay rule.

3. The trial court erred by finding that impeachment evidence was not exculpatory material and in denying Adams' motion for new trial based on the Commonwealth's failure to disclose exculpatory evidence.

4. The trial court erred in denying Adams' motion to suppress incriminating statements obtained in violation of his Miranda rights.

5. The trial court abused its discretion in excluding evidence relevant to Adams' defense and to impeachment of the credibility of the Commonwealth's witnesses.

Id. at 1–9.

## II. Discussion

### A. Standard of Review and Limitations on Federal Habeas Corpus Relief

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1)

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). There is a presumption of correctness that attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e).

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 730–31 (1991). The court will now address each of Adams' claims in turn, applying the appropriate standards and limitations identified in this section.

### B.  Claim 1 – Prior Bad Acts Evidence

Because federal habeas relief is limited to claims based on violations of the Constitution or laws of the United States, state court decisions on state law questions are not cognizable on federal habeas review, unless the petitioner alleges that the state court's application of state law is a cognizable violation of the federal constitution. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998). As stated by the Fourth Circuit Court of Appeals, "we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). Whether and when "prior bad acts" are

admissible, and for what purpose, are matters of state evidence law. Adams has alleged nothing to raise this evidentiary decision to the level of a constitutional violation, and the court must, therefore, dismiss this claim.

### C. Claim 2 – "Recent Complaint" Exception to Hearsay Rule

The "recent complaint" to which Adams objects was admitted under Virginia Code § 19.2-268.3. Absent allegations sufficient to support a constitutional violation, the state court's interpretation of this state law is not within the purview of federal habeas review. Estelle, 502 U.S. at 67–68. An allegation that a state trial court has abused its discretion, "without more, is not a constitutional violation." Stanford v. Parker, 266 F.3d 442, 459 (6th Cir. 2001). The court must dismiss this claim.

### D. Claim 3 – Alleged Brady Violation

Allegations of Brady violations are allegations of constitutional due process violations, appropriate for this court's consideration. Because this matter was litigated in the state court on Adams' direct appeals, this court can grant relief only if the state court's decision was contrary to federal law, based upon an unreasonable application of federal law, or based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). The last reasoned opinion in the state courts came from the Court of Appeals of Virginia, as the Supreme Court of Virginia summarily denied Adams' petition for appeal. Summary denials of appeal without an opinion are presumed to be decisions on the merits of the claim. Harrington v. Richter, 562 U.S. 86, 99 (2011). On habeas review, a federal court is to "look through" the summary decision to the last court decision providing a rationale for the merits decision and to presume that the state high court adopted the same reasoning. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Ylst v. Nunnemaker, 501 U.S. 797,

803 (1991). Accordingly, this court will assess the Court of Appeals opinion for reasonable determination of the facts and law.

As noted in the background section of this opinion, Adams complains of two Brady decisions of the trial court: The first involves Mrs. Adams' alleged written statement to police in December 2016, and the other involves K.A.'s thirteen-page statement in 2012.

1. Mrs. Adams' Statement to Police

According to the trial testimony, Mrs. Adams took S.A. to the police station the same day that S.A. told her what Adams had done in August or September. Adams' adult daughter from a prior marriage, Jessica, went to the police station with them, and testified she saw the officer give Mrs. Adams a statement form to fill out, which Mrs. Adams did. Because defense counsel never received any statement written by Mrs. Adams for the police, describing what S.A. told her, counsel believed that she had been denied access to potential impeachment information.

Other testimony was that S.A. provided the information to the officers that the arrest warrants were based upon. The Commonwealth's Attorney represented to the court that no written statement had been taken by the police from Mrs. Adams. The court noted that counsel had ample opportunity to examine probable cause statements supporting the arrest warrant, to question the officers, and to question Mrs. Adams. The trial court made a factual finding that no written statement from Mrs. Adams existed, and therefore, there was nothing for the Commonwealth to turn over to the defense. Trial Tr. vol. 3, 12–18. The Court of Appeals upheld the trial court's factual findings, and further noted that Adams had the burden of proving that the evidence existed and that it was favorable. Based on the record, this court cannot say that the Court of Appeals decision was unreasonable.

By statute, a federal court on habeas review must presume that the state court's factual findings are correct, and this presumption can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e). Adams has not offered any evidence that the state court's factual finding is incorrect, much less clear and convincing evidence. The trial court had the opportunity to observe the demeanor and testimony of the witnesses, and the court's resolution of the factual dispute cannot be disturbed on appeal, much less on collateral attack. Because this factual finding is supported by evidence and presumed correct, this court must dismiss this claim.

2. K.A.'s Thirteen-Page Statement in 2012

To elaborate on the information provided in the background section of this opinion, Adams' 2014 conviction for aggravated sexual battery arose from Adams' plea of guilty to one charge of sexual battery of a child between thirteen and fifteen years of age, against her will, by use of force, threat or intimidation, or through her physical helplessness or mental incapacity. The victim in that case was K.A., Adams' daughter from his first marriage, who at the time was living with Adams and her sisters, along with Adams' second wife and their two children (one of whom was S.A.). She originally completed a thirteen-page statement for police in early 2012, at age thirteen, describing what had happened. When the case went to preliminary hearing in 2012, she recanted her statement under oath, and the charges were dropped. The charges were brought by direct indictment more than a year later. This time, K.A. was prepared to testify against him, and he chose to plead guilty. Defense counsel knew that K.A. had testified under oath that her prior statement was fabricated; counsel had the transcript of the 2012 preliminary hearing.

The trial court ruled that the conviction and K.A.'s limited testimony about what Adams had done to her was admissible to prove modus operandi, because her description of the sexual abuse bore a strong resemblance to the pattern of the offense charged, and that evidentiary ruling

was upheld by the Court of Appeals. CCR at 185–187. K.A. also testified that she originally withdrew her allegations because of pressure from the family, including that she would never be allowed to see her siblings again, but that she later determined the need for going forward with the charges, so she went to Social Services to tell them what happened. Trial Tr. vol. 2, 42–45. She testified that she was present in court in May 2014 and prepared to testify, but that her father pled guilty. After K.A.'s foundational testimony, the prosecution introduced a certified copy of the 2014 conviction. During her cross-examination, K.A. admitted saying at the June 29, 2012, preliminary hearing that she was "very angry with [her] dad" when she wrote the thirteen-page statement. Id. at 55–56. She also admitted testifying in 2012 that no one had threatened her to get her to recant her statement, and that her 2012 testimony was a lie. Id. at 57, 64–65.

Immediately after K.A.'s testimony, defense counsel moved for a mistrial because the Commonwealth had never provided her a copy of the thirteen-page statement, even though the trial court had ordered the Commonwealth to produce any exculpatory prior statements of witnesses. The Commonwealth responded that the statement was not exculpatory, because her 2012 written statement was consistent with her testimony at the trial. Defense counsel responded that "If there's a variation . . . between the testimony presented here today regarding the incident and the thirteen page [sic] statement that she wrote . . . then obviously . . . that is exculpatory evidence" or potentially exculpatory evidence that counsel would be allowed to use for impeachment. Id. at 67. The Commonwealth's Attorney noted that counsel had the 2012 preliminary transcript for some time before the trial and before the pretrial motions, yet never specifically requested the thirteen-page statement referenced in the transcript until K.A. had already testified. The trial court ruled that the thirteen-page statement was not exculpatory and denied the motion. Id. at 69–70.

In upholding the trial court's decision, the Court of Appeals agreed that the thirteen-page statement was not exculpatory. The statement contained allegations against Adams, consistent with K.A.'s trial testimony, so it was not exculpatory in that regard. As for being "potentially exculpatory" for impeachment, the Court of Appeals held that Adams failed to prove that the statement had any inconsistencies and thus had not proved that the evidence was exculpatory or had been improperly suppressed. With the background for the court's decision having been fleshed out, this court now turns to analyzing whether the Court of Appeals' determination of fact or application of law is unreasonable.

A state court's decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." Schriro, 550 U.S. at 473. If this standard is difficult to meet, as the Supreme Court has stated, "that is because it was meant to be." Burt v. Titlow, 571 U.S. 12, 20 (2013).

Brady requires the government to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or punishment." 373 U.S. at 87. Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The Court in Bagley also recognized that impeachment evidence can be exculpatory. Id. That K.A. had recanted her statement at one time was exculpatory, and that information was provided by the Commonwealth. The court cannot say that the original thirteen-page statement was exculpatory, even if there had been some variations between the statement and K.A.'s trial testimony. Adams was not on trial for what happened in his offense against K.A. Nor would any inconsistencies in the prior complaint be as relevant to impeachment as her admission that she had lied in court in 2012. The Court of Appeals could reasonably conclude that whatever cumulative impeachment value, if any, the 2012 statement would have, it was not likely to change the outcome of the trial. See Huffington v. Nuth, 140 F.3d 572, 581 (4th Cir. 1998) (holding that failure to obtain cumulative evidence does not demonstrate prejudice in a claim for ineffective assistance of counsel).

Nor did Adams establish that the statement could be used to impeach K.A. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109–110 (1976). "There is no constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Caro, 597 F.3d 608, 619 (4th Cir. 2010). The burden was on Adams to establish—with more than speculation—that the 2012 written statement had impeachment value, even though the Commonwealth's Attorney advised the trial court that the statement was

consistent with K.A.'s trial testimony. In so holding, the Court of Appeals of Virginia properly applied the applicable federal law, and therefore, the decision was reasonable.

Because the state court decision is neither an unreasonable determination of the facts nor an unreasonable application of federal law, the court must dismiss this claim.

### E. Claim 4 – Alleged Miranda Violation

As previously indicated, the trial court declined to consider Adams' motion to suppress statements made to Deputy Young because counsel did not file the motion in writing, at least seven days before trial, as required by Virginia Code § 19.2-266.2. Rather, counsel raised the issue the morning of trial. By failing to raise the issue timely, he is deemed to have waived his right to challenge the evidence. Upchurch v. Commonwealth, 521 S.E.2d 290, 292 (Va. Ct. App. 1999). That waiver is a bar to consideration of the issue on appeal, as well. Schmitt v. Commonwealth, 547 S.E.2d 186, 199 (Va. 2001). When a matter is not determined on the merits because of a state statute, then it has been procedurally defaulted on firmly established independent state grounds. O'Dell v. Netherland, 95 F.3d 1214, 1241 (4th Cir. 1996). If the firmly established grounds are regularly followed, then a matter defaulted under independent and adequate state law grounds is also defaulted for purposes of federal habeas review. James v. Kentucky, 466 U.S. 341, 348–49 (1984). The Fourth Circuit Court of Appeals has recognized Virginia Code § 19.2-266.2 as an independent and adequate ground for the state court's decision. Schmitt v. Kelly, 189 F. App'x 257, 273 (4th Cir. 2006) (unpublished). Accordingly, this claim is procedurally defaulted.

Before a federal habeas court may consider the merits of a procedurally defaulted claim, a petitioner must establish both cause for default and actual prejudice because of the violation of his federal constitutional rights. Coleman, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense, and not fairly attributable to the

prisoner. Id. at 756–57. Examples of good cause for default include interference by government officials that makes compliance impossible or facts not reasonably available to the prisoner at the time of his default. Murray v. Carrier, 477 U.S. 478, 488 (1986); Reed v. Ross, 468 U.S. 1 (1984). Inadvertence of state trial counsel, however, is generally not adequate cause for default, unless it rises to the level of constitutionally ineffective assistance of counsel. Murray, 477 U.S. at 486. The only grounds ever asserted by Adams for not filing a timely motion to suppress was that the discovery containing Deputy Young's summary of Adam's arrest was not received until August 29, 2017, along with hundreds of other pages of discovery.[3] The Court of Appeals of Virginia found that the trial court's decision was not an abuse of discretion, because counsel had two weeks before trial when she received this portion of the discovery. This court cannot say that this decision was unreasonable or contrary to law, especially when Adams himself should have known that he spoke to the arresting officer and what he said.

Further, Adams cannot show prejudice. To establish the prejudice necessary to overcome procedural default, a petitioner must show that the error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). An obvious precursor to showing that an error caused prejudice is showing that an error occurred at all. The existence of a Miranda violation is not as clear cut as Adams suggests.

Before Miranda rights attach, a defendant must be in custodial interrogation. United States v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995). A person is "in custody" for Miranda purposes if he has been formally arrested or if he is questioned under circumstances where his freedom of

---

[3] In his reply to respondent's motion to dismiss, Adams alleges that Martinez v. Ryan, 566 U.S. 1 (2012) satisfies the cause requirement. However, Martinez only applies to ineffective assistance of counsel at state habeas proceedings, when the state counsel fails to raise a meritorious claim for ineffective assistance of trial counsel. Adams has never raised a claim for ineffective assistance of counsel, either here or in state court.

action is curtailed to the degree associated with a formal arrest. Id. A person is not in custody, nor are Miranda warnings required, during a routine traffic stop. Berkemer v. McCarty, 468 U.S. 420, 437–42 (1984). Interrogation is defined as express questioning or its functional equivalent, any words or actions on the part of the police that they should know are reasonably likely to elicit an incriminating response from the suspect, other than those normally attendant to arrest and custody. Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Routine booking questions, such as the suspect's biographical information, do not require Miranda warnings. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990). The situation in Adams' case raises both issues.

On December 4, 2016, Deputy Young was on the lookout for a certain vehicle to make a welfare check on the driver. He saw a truck matching the description heading in the opposite direction from him on the same road. Another deputy was travelling two cars behind the truck. While Young looked for a place to turn around, he radioed the other deputy and asked for confirmation that the truck was the one mentioned in the "Be on the lookout for" (BOL) notice. Deputy Berry did as Deputy Young requested, and finding that the truck was the correct vehicle, he stopped the truck to speak with the driver. Once Young turned around, he caught up with Deputy Berry and the driver of the truck, who was standing outside the vehicle speaking with Berry. Berry was only aware of the need for a wellness check; Berry did not know that arrest warrants on the current charges were outstanding for Adams. Trial Tr. vol 2, 10–13, 22.

Young, however, knew that Adams had outstanding warrants. When Young arrived on scene, he joined the conversation. He confirmed Adams' identity and asked if Adams had any weapons. He had none. Then Young advised Adams that there were warrants out for his arrest; Young told Adams he had not seen the warrants and did not know what they were for, and he asked if Adams had any idea what they were for. Adams said that it was "something he had told

14

his wife." Id. at 20. Young then asked what Adams told his wife, and Adams stated, "something I told, correction, excuse me, something I told, something I did with our first daughter." Id. Adams did not answer any other questions after that. Young testified that he then advised Adams that he was under arrest and once the deputy could get his hands on a copy of the warrants, he would explain the charges to Adams. Young then placed Adams in the backseat of Deputy Berry's patrol car for transport to the Rockbridge County Sheriff's Office. Because Berry took Adams to the Sheriff's Office, Young never served the warrants himself, and he testified he still did not know what the warrants were for. Id. at 20–23. On cross examination, Young stated that Adams was detained by Berry for the welfare check; had Young not learned from dispatch that there were warrants, Adams would have been free to leave once Berry determined that Adams was not a danger to himself or others. He did not consider Adams under arrest until he formally arrested Adams. Id. at 23.

Whether a person detained by law enforcement is in custody is a contextual inquiry based on all the circumstances. As noted earlier, a brief stop or traffic stop does not constitute custody for purposes of Miranda, even though there is a temporary restraint on a person's liberty. Berkemer, 468 U.S. at 437–42. The person may be detained, though not in custody, only as long as reasonably necessary to accomplish the purpose of the initial stop. Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion). In the short period of time it took Deputy Young to turn around and join Deputy Berry and Adams, Berry had not completed the wellness check; the men were still talking. Adams was not in handcuffs, and he was standing outside his truck. Young joined the conversation and asked Adams if he had any weapons. That is an appropriate question to ask a subject on a welfare check. The Fourth Circuit Court of Appeals has noted that a detention is not converted into a custodial arrest by police drawing weapons, handcuffing a suspect, placing

him in the patrol for questioning, or even threatening the use of force. United States v. Leshuk, 65 F.3d 1105, 1109–10 (4th Cir. 1995). The question becomes whether Adams' status changed from detention to custody when Young said there were outstanding warrants, or when Young advised Adams that he was under arrest. Reasonable jurists could differ on this issue, and of course, the statements at issue occurred between those two events. Because reasonable jurists could find that Adams was not in custody at the time the questions were asked, Adams has failed to establish that a Miranda violation occurred.

Even if one decided that Adams was in custody when the questions were asked, the circumstances here do not establish the violation of a constitutional right. Miranda is a prophylactic rule designed to minimize the risk of the coercion inherent in the custodial setting from leading to an unreliable and involuntary confession, in violation of a defendant's due process rights and right against self-incrimination. Statements taken without Miranda warnings can still be used to impeach a defendant who testifies, as long as the statements were not involuntary. Oregon v. Elstad, 470 U.S. 298, 307–08 (1985). Adams testified in his defense, and he could have been impeached with those statements. Accordingly, Adams cannot establish prejudice from the procedural default of his Miranda claim. The court will dismiss this claim.

F.  Claim 5 – Excluding Evidence Relevant to Adams' Defense

In his § 2254 petition Adams did not identify exactly what evidence he claims was wrongly excluded. In his reply to respondent's motion to dismiss, he alleges that the claim he made in state court is incorporated by reference because he attached the opinion from the Court of Appeals of Virginia. To the extent he alleges that the trial court's rejection of A.A.'s testimony that she made a false claim against Adams in 2012 and then recanted it, the trial court ruled that A.A.'s testimony about her own actions were irrelevant to whether (1) S.A.'s complaint was false and (2)

whether Adams committed the offense against S.A. That is clearly an evidentiary decision under state rules of evidence. As indicated in discussing Adams' first two claims, federal habeas courts do not review the admissibility of evidence decisions under state law. Burket, 208 F.3d at 186. An allegation that an evidentiary decision was an "abuse of discretion," without more, is insufficient to allege a federal constitutional violation. Stanford, 266 F.3d at 459. The court must also dismiss this claim.

### III. Conclusion

After careful review of the petition, the motion to dismiss, the briefs of the parties, and pertinent parts of the state court records, transcripts, and decisions, the court concludes that the respondent's motion to dismiss must be granted.

When issuing a final order adverse to a § petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. Gonzales v. Thaler, 565 U.S. 134, 140–41 (2012). Adams has not made such showings in this case.

An appropriate order will issue this day.

**ENTER:** This __14th__ day of April, 2021.

_____
Senior United States District Judge